FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 18, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID B.,[1] | No. 2:19-cv-00095-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 13, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

4.  The Court, having reviewed the administrative record and the parties' briefing,

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 13, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

If the claimant is found disabled at any point in this process, the ALJ must also determine if the disability continues through the date of the decision.  The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability continues or ends.  20 C.F.R. § 404.1594.  This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement.  *Compare* 20 C.F.R. § 404.1520 *with* § 404.1594(f).  A claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Determination of whether a person's eligibility for disability benefits continues or ends involves an eight-step process under Title II. 20 C.F.R. § 404.1594(f). The first step addresses whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, step two determines whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1594(f)(2). If the impairment does not meet or equal a listed impairment, the third step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1).

If there has been medical improvement, at step four, it is determined whether such improvement is related to the claimant's ability to do work—that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. § 404.1594(f)(4). If the answer to step four is yes, the Commissioner skips to step six and inquires whether all of the claimant's current impairments in combination are severe. *Id.* If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step five. *Id.*

At step five, if there has been no medical improvement or the medical improvement is not related to the ability to do work, it is determined whether any of the special exceptions apply. 20 C.F.R. § 404.1594(f)(5). At step six, if medical improvement is shown to be related to the claimant's ability to work, it is determined whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1594(f)(6). If the step six finding is that the claimant's current impairments are not severe, the claimant is no longer considered to be disabled. 20 C.F.R. § 404.1594(f)(6).

If the step six finding is that the claimant's current impairments are severe, at step seven, a residual functional capacity finding is made and it is determined whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 404.1560 (2012); *see also* SSR 82-61, 1982 WL 31387.

Finally, at step eight, if the claimant cannot perform past relevant work, the Commissioner must prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1594(f)(8). If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical

improvement; if, however, he can perform a significant number of other jobs, disability ceases. *Id*.

## ALJ'S FINDINGS

On November 7, 2015, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of November 2, 2015. Tr. 227-28. The application was denied initially and on reconsideration. Tr. 138-40, 142-44. Plaintiff appeared before an administrative law judge (ALJ) on May 23, 2017. Tr. 41-105. On August 9, 2017, the ALJ granted Plaintiff's claim for benefits from November 2, 2015 through May 1, 2017 and denied Plaintiff's claim for benefits from May 2, 2017 through August 9, 2017, the date of the ALJ's decision. Tr. 12-37.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 2, 2015, the alleged onset date. Tr. 19. At step two, the ALJ found that Plaintiff had the following severe impairments from November 2, 2015 through May 1, 2017, the period during which he was under a disability: cervical spine arthritis, sleep apnea, asthma/sinusitis, and obesity. Tr. 20. The ALJ found that, from November 2, 2015 through May 1, 2017, Plaintiff's cervical spine arthritis medically equaled the criteria of Listing 1.04A of 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. Therefore, the ALJ concluded that Plaintiff

was under a disability, as defined in the Social Security Act, from November 2, 2015 through May 1, 2017.  Tr. 26.

Because the ALJ found Plaintiff was disabled, the ALJ then considered whether the disability continued through the date of the decision.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 2, 2015, the alleged onset date.  Tr. 19.  At step two, the ALJ found that, beginning on May 2, 2017, Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment.  Tr. 26.  At step three, the ALJ found that medical improvement occurred as of May 2, 2017.  Tr. 26.  At step four, the ALJ found Plaintiff's medical improvement was related to his ability to work.  Tr. 27.  The ALJ skipped to step six and found that Plaintiff's severe impairments remained the same as those present during the period of disability.  Tr. 26.  At step seven, the ALJ then found that, beginning May 2, 2017, Plaintiff had the residual functional capacity to perform light work, with the following limitations:

> [Plaintiff has the] ability to lift and carry 20 pounds occasionally and 10 pounds frequently, and the ability to sit and to stand/walk each for 6 hours in an 8-hour workday.  However, [Plaintiff] is restricted to occasionally stooping, crouching, crawling, and climbing ramps and stairs.  On a frequent basis, [Plaintiff] is able to kneel and balance.  He cannot climb ladders or scaffolds.  [Plaintiff] must avoid concentrated exposure to pulmonary irritants, the need to avoid heavy industrial vibration, and the need to have no exposure to unprotected heights and

hazardous machinery[.] The residual functional capacity includes occasional overhead reaching, frequent reaching bilaterally within 18 inches of the body, and occasional reaching 18 inches outside of the body.

Tr. 27.

The ALJ then determined that, beginning May 2, 2017, Plaintiff was able to perform his past relevant work as a transportation agent. Tr. 30. Finally, at step eight, the ALJ found that considering Plaintiff's age, education, work experience, residual functional capacity, and testimony from a vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as small products assembler, usher, counter clerk, order clerk, and microfilm document preparer. Tr. 31. The ALJ concluded that Plaintiff's disability ended on May 2, 2017. Tr. 32.

On January 29, 2019, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 13 at 17.

## DISCUSSION

### A.   Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Margaret Moore, Ph.D., John Arnold, Ph.D., Dennis Pollack, Ph.D., and counseling records from Heart to Heart Counseling.  ECF No. 13 at 17-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 404.1513 (2013).[3]  However, an ALJ

---

[3] For cases filed prior to March 27, 2017, the definition of an acceptable medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, are located at 20 C.F.R. § 404.1513(d) (2013).

is required to consider evidence from non-acceptable medical sources. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. § 404.1513(d) (2013). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 404.1513(d) (2013). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Moore

Dr. Moore, a State agency psychological consultant, reviewed the medical record and testified at the administrative hearing. Tr. 63-77. Dr. Moore opined that Plaintiff did not have a severe mental impairment and therefore, he had no work-related mental limitations. Tr. 72, 74. She opined that Plaintiff would not have any limitations with respect to his ability to understand, remember, and apply information. Tr. 72-73. She testified that he was mildly impaired in the ability to interact with others, concentrate, persist, and maintain pace, and adapt or manage himself. Tr. 72-74. Dr. Moore testified the record showed Plaintiff was not seen very often by his psychiatrist, Austin Dosh, Ph.D., which suggested that he did not need to be seen very often. Tr. 64. Dr. Moore testified the record showed Plaintiff's depression was stable on medications, except for some seasonal depression for which a light box was prescribed. Tr. 64-65. Dr. Moore testified that overall, the medical record indicated that Plaintiff's depression was "relatively

mild," and she diagnosed Plaintiff with mild major depressive disorder. Tr. 65.

Dr. Moore also opined that Plaintiff had unspecified generalized anxiety disorder.

Tr. 67. She found insufficient evidence of a somatoform disorder, personality

disorder, or attention deficit hyperactivity disorder (ADHD). Tr. 67-68. The ALJ

gave Dr. Moore's opinion great weight. Tr. 25.

Plaintiff contends the ALJ erred by giving great weight to Dr. Moore, a

nonexamining psychologist, and little weight to all other medical sources who

provided opinions as to Plaintiff's mental limitations. ECF No. 13 at 17-21; *see* Tr

22-25, 30. An ALJ may credit the opinion of nonexamining expert who testifies at

the hearing and is subject to cross-examination. *See Andrews*, 53 F.3d at 1042

(citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)). The opinion

of a nonexamining physician may serve as substantial evidence if it is supported by

other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041.

Other cases have upheld the rejection of an examining or treating physician based

in part on the testimony of a nonexamining medical advisor when other reasons to

reject the opinions of examining and treating physicians exist independent of the

nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v.

Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results,

contrary reports from examining physicians and testimony from claimant that

conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179, 184

(9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results)). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Here, the ALJ found that Dr. Moore reviewed the longitudinal record, which was not available to other sources in the record. Tr. 25. Furthermore, the ALJ found that Dr. Moore's opinions were supported by evidence in the record, as she provided references to objective medical findings and specific medical exhibits in support of her opinions. Tr. 25; *see, e.g.*, Tr. 64-65, 596-607 (Dr. Moore cited to treatment notes from Plaintiff's psychiatrist, showing that Plaintiff was not seen very often, his medications had been stable, there was a seasonal component to Plaintiff's depression, and it was recommended that Plaintiff use a light box); Tr. 67, 399, 596-607, 673, 678 (Dr. Moore noted that Dr. Arnold first suggested that Plaintiff had a somatic symptom related disorder, Dr. Pollock reviewed Dr. Arnold's evaluation and adopted the diagnosis, but the psychiatrist at the Veterans Administration did not make this diagnosis); Tr. 67, 399, 399, 678 (Dr. Moore observed that Dr. Arnold diagnosed unspecified personality disorder features of schizoid, but Dr. Pollock did not make the same diagnosis, nor did any of the

treating sources); Tr. 68, 327 (Dr. Moore cited to Plaintiff's disability ratings document from 2004, and the mention that Plaintiff had been diagnosed with ADHD in 2000, but stated she did not see any follow-up to that diagnosis or testing related to it in the record); Tr. 68-69, 673-78 (Dr. Moore opined that Dr. Pollock's evaluation established "solidly normal cognitive ability"). The ALJ reasonably concluded that Dr. Moore's opinions were supported by evidence in the record.

Plaintiff suggests the ALJ should have credited the opinions of other medical sources over Dr. Moore's opinions. ECF No. 13 at 21. However, as discussed *supra* and *infra*, the ALJ provided legally sufficient reasons for giving less weight to the other medical source opinions and for giving more weight to Dr. Moore's opinions.

### 2. Dr. Arnold

On January 13, 2016, Dr. Arnold examined Plaintiff and completed a psychological assessment report. Tr. 396-99. Dr. Arnold diagnosed Plaintiff with major depressive disorder, recurrent, moderate to severe; generalized anxiety disorder with social phobic features; unspecified personality disorder with schizoid features, rule out full disorder; and somatic symptom disorder, moderate, predominately pain. Tr. 399. He opined that Plaintiff's prognosis was guarded to poor. Tr. 399. Although the ALJ discussed Dr. Arnold's diagnoses and prognosis, he did not weigh Dr. Arnold's opinion or assert any reasons for discounting his

evaluation.  Tr. 22.  Plaintiff argues that the ALJ "never indicated in the decision why he discounted Dr. Arnold's findings and opinion."  ECF No. 13 at 18 (citing Tr. 22).  Where a physician's report does not assign any specific limitations or opinions in relation to an ability to work, the ALJ need not provide reasons for rejecting the opinion because "the ALJ did not reject any of [the report's] conclusions."  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *see also Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment ... is not sufficient to sustain a finding of disability.").  Here, Dr. Arnold's findings concern only medical diagnoses and do not address any functional limitations or opinions regarding Plaintiff's ability to work.  Tr. 396-99.  Therefore, the ALJ did not need to provide reasons to reject Dr. Arnold's findings.  *Turner*, 613 F.3d at 1223.

### 3. Dr. Pollack

On May 1, 2017, Plaintiff was examined by clinical psychologist, Dr. Pollack, who completed a mental medical source statement.  Tr. 673-81.  Dr. Pollack diagnosed Plaintiff with major depressive disorder, moderate; somatic symptom disorder with predominant pain, severe; and unspecified anxiety disorder.  Tr. 678.  He opined that Plaintiff had marked limitations in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without

ORDER - 18

interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 679-81. Dr. Pollack opined that Plaintiff had moderate limitations in the ability to work in coordination with or proximity to others without being distracted by them. Tr. 680.

The ALJ discounted Dr. Pollack's opinion. Tr. 23. Because Dr. Pollack's opinion was contradicted by nonexamining psychologist Dr. Moore, Tr. 63-77, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Pollack's opinion. *Bayliss*, 427 F.3d at 1216.

### a. Symptom Exaggeration

The ALJ discounted Dr. Pollack's opinion because Plaintiff showed signs of exaggeration during his evaluation. Tr. 23. Evidence that a claimant exaggerated his symptoms is a specific and legitimate reason to reject a doctor's conclusions. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In the opening brief, Plaintiff did not challenge this reason articulated by the ALJ, thus it is waived.[4]

---

[4] Although Plaintiff responds to the Commissioner's briefing about the ALJ's exaggeration finding in Plaintiff's reply brief, ECF No. 18 at 3-4, Plaintiff failed to raise symptom exaggeration as an issue in his opening brief. ECF No. 15 at 15-16. Counsel has been cautioned numerous times that challenges to the ALJ's findings

ORDER - 19

*Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Despite Plaintiff's waiver, the Court has reviewed ALJ's finding. The ALJ noted that Dr. Pollack found Plaintiff's elevated F-scale in personality test validating scales suggested that Plaintiff had a "greater than normal measure of unusual responses." Tr. 23, 676. The ALJ also observed that Dr. Pollack then opined Plaintiff's profile was valid, although he also suggested "there may be some symptom exaggeration." Tr. 23, 676. The ALJ's interpretation of Dr. Pollack's opinion and finding that Dr. Pollack's opinion was based, in part, on Plaintiff's exaggerated symptoms was reasonable. This was a specific and legitimate reason to discount Dr. Pollack's opinion.

b. Supportability

The ALJ discounted Dr. Pollack's opinion because the nonexamining psychologist, to whose opinion the ALJ assigned great weight, found Dr. Pollack's assessment to be "sloppy." Tr. 23. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §

---

must be raised in the opening brief. *See, e.g., Rainey v. Comm'r of Soc. Sec.*, No. 2:17-cv-00271-FVS (E.D. Wash. Sept. 25, 2018) (Report and Recommendation, ECF No. 17 at 6-10) (adopted Oct. 11, 2018).

404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).  Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(c)(6) (assessing the extent to which a medical source is "familiar with the other information in [the claimant's] case record").

Plaintiff fails to identify any evidence in the record that undermines the ALJ's conclusion.  ECF No. 13 at 18; *see Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm).  Therefore, any challenge to this finding is waived.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Kim*, 154 F.3d at 1000.  However, after comparing Dr. Moore's opinion with Dr. Pollack's examination and opinion, and considering the entire record, the Court concludes the ALJ's weighing of these two doctors' opinions is supported by substantial evidence.  As to Dr. Moore, she reviewed the entire record, including Dr. Pollack's examination report and mental medical source statement.  Tr. 63; *see* Tr. 673-81.  The ALJ referenced Dr. Moore's testimony that Dr. Pollack failed to refer to Plaintiff's interest in

pornography which allegedly caused his discharge from the military, and the ALJ found "[t]his fact might play a role in the elevation of certain scores in the MMPI test." Tr. 23, 71. The ALJ indicated that Dr. Moore concluded Plaintiff had generalized anxiety disorder, unspecified, and that Dr. Moore testified Dr. Pollack's reference to social phobia features was questionable, leading her to conclude Plaintiff had suggested such a symptom to Dr. Pollack. Tr. 24, 66-67. Furthermore, the ALJ referenced Dr. Moore's opinion that Plaintiff's physical condition could play a role in his alleged anxiety symptoms. Tr. 24, 66-67. The ALJ also cited Dr. Moore's testimony that she was surprised Dr. Pollack suggested Plaintiff may have a somatoform disorder in a medical record filled with physical problems, and Dr. Moore found insufficient evidence of a somatoform disorder. Tr. 24, 67. The ALJ's finding that Dr. Moore's opinion was more supported by the record than Dr. Pollack's opinion is supported by substantial evidence. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. This was a specific and legitimate reason to credit Dr. Moore's opinion over Dr. Pollack's opinion.

### c. Length of Treatment Relationship and Frequency of Examination

The ALJ discounted Dr. Pollack's opinion on the ground that he did not have a treatment relationship with Plaintiff and only examined Plaintiff once. Tr.

23. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 404.1527(c). However, the fact that an evaluator examined Plaintiff one time is not a legally sufficient basis for rejecting the opinion. The regulations direct that all opinions, including the opinions of examining providers, should be considered. 20 C.F.R. § 404.1527(b), (c). In the opening brief, Plaintiff did not challenge this reason articulated by the ALJ, thus it is waived. *Kim*, 154 F.3d at 1000. Despite Plaintiff's waiver, the Court has reviewed ALJ's finding. The Court notes the ALJ's rationale is inconsistent with the ALJ giving great weight to Dr. Moore, who had no treatment relationship with Plaintiff. Tr. 25. This was not a specific and legitimate reason to discount Dr. Pollack's opinion. However, such error is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Pollack's opinion. *Molina*, 674 F.3d at 1115.

### d. Temporary Condition

The ALJ discounted Dr. Pollack's opinion because his evaluation did not cover the required 12-month durational period. Tr. 23. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 404.1505(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than 12 months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians'

short-term excuse from work was not indicative of "claimant's long-term functioning"). In the opening brief, Plaintiff did not challenge this reason articulated by the ALJ, thus it is waived. *Kim*, 154 F.3d at 1000. Despite Plaintiff's waiver, the Court has reviewed ALJ's finding.

Here, the ALJ noted that Dr. Pollack's mental medical source statement did not identify an assessment period, leading to the "reasonable presumption" that it was only a current assessment in conjunction with Dr. Pollack's May 14, 2017 evaluation. Tr. 23. Nowhere in the mental medical source statement, nor in the accompanying examination notes, did Dr. Pollack suggest that Plaintiff's alleged mental conditions were temporary. *See* Tr. 673-81. Rather, Dr. Pollack noted during his examination that Plaintiff reported he suffered from major depression, which had been diagnosed while he was in the military. Tr. 674. This was not a specific and legitimate reason to discredit Dr. Pollack's opinion. However, such error is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Pollack's opinion. *Molina,* 674 F.3d at 1115.

### e. Paragraph B Criteria

The ALJ discounted Dr. Pollack's opinion because the headings on his mental medical source statement and the items to be rated under each heading related to the former Paragraph B criteria of the mental impairment listings, rather

than the current Paragraph B criteria for those listings. Tr. 23. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(c)(6) (assessing the extent to which a medical source is "familiar with the other information in [the claimant's] case record"). In the opening brief, Plaintiff did not challenge this reason articulated by the ALJ, thus it is waived. *Kim*, 154 F.3d at 1000. Despite Plaintiff's waiver, the Court has reviewed ALJ's finding.

The former Paragraph B criteria included activities of daily living, maintaining social functioning, ability to concentrate, persist, or maintain pace, and repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, Subpart P, Appendix I. On January 17, 2017, new 12.00 listings took effect. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66160–62 (Sept. 26, 2016). The revised Paragraph B criteria include the ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself. 20 C.F.R. § 404, Subpart P, Appendix I. The headings on the mental medical source statement completed by Dr. Pollack include understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 679-81. This was not a specific

and legitimate reason to discount Dr. Pollack's opinion, as the headings on the form used by Dr. Pollack appear to correspond to the current Paragraph B criteria. However, such error is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Pollack's opinion. *Molina,* 674 F.3d at 1115.

### 4. Heart to Heart Counseling

Kipp Helmer, Licensed Independent Clinical Social Worker (LICSW) at Heart to Heart Counseling, treated Plaintiff from late 2015 into 2016. Tr. 372-78, 404-13, 458-75, 517-58. The record includes treatment notes from Heart to Heart Counseling. Tr. 372-78, 404-13, 458-75, 517-58. Some of the treatment notes consisted of words that Plaintiff circled to represent how he felt on a particular day, such as "depressed," "irritated," "happy," "conflicted," "mad," and "exhausted." Tr. 522-55. Other treatment notes provided conclusions, such as "[Plaintiff] appears to be depressed." Tr. 472. Although the ALJ discussed the records from Heart to Heart Counseling, he did not weigh Mr. Helmer's opinion or assert any reasons for discounting the conclusions within the treatment notes.

Plaintiff asserts the ALJ should not have discounted the treatment notes from Heart to Heart Counseling. ECF No. 13 at 19. However, Mr. Helmer's observations are not medical opinions on functional limitations. "Medical opinions are statements from acceptable medical sources that reflect judgments about the

nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a). The Ninth Circuit has found no error in ALJ decisions that do not weigh statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work. *See, e.g.*, *Turner*, 613 F.3d at 1223 (recognizing that when a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions."). As noted by the ALJ, the Heart to Heart Counseling records were treatment notes that "generally contained circles around words representing how [Plaintiff] felt on that particular day," and included "vague conclusions…without providing reference to objective medical findings." Tr. 23 (citing Tr. 372-78, 404-13, 458-75, 517-58). In his treatment notes, Mr. Helmer did not opine any limitations regarding Plaintiff's specific functioning. The ALJ did not err in failing to credit the treatment notes from Heart to Heart Counseling because the notes contained no opinions to credit.

## B. Plaintiff's Symptom Claims

In his opening brief, Plaintiff argues that the activities cited by the ALJ did "not constitute clear and convincing reasons to discount the opinion of the

examining doctors." ECF No. 13 at 21. However, in his reply brief, Plaintiff contends the ALJ erred by finding Plaintiff's activities did not constitute a clear and convincing reason to discount his symptom claims. ECF No. 16 at 2. Plaintiff fails to challenge any of the other reasons articulated by the ALJ for discounting his symptom claims, thus challenges to any of the other reasons are waived. *Kim*, 154 F.3d at 1000. Despite Plaintiff's waiver, the Court has reviewed the ALJ's findings.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 28.

### 1. Inconsistent with Daily Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of impairment Plaintiff alleged. Tr. 29. An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ noted Plaintiff reported limitations in lifting, sitting in the same position for too long, walking for long distances, standing for prolonged periods, and using his fingers for more than five minutes.  Tr. 27-28.  However, the ALJ observed Plaintiff's daily activities included washing the dishes and doing laundry, feeding the family's two dogs in the morning and in the evening, and preparing the evening meal for the family.  Tr. 27.  The ALJ indicated that Plaintiff reported rising with his wife as she got ready for work, preparing coffee, watching television, playing video games, and driving.  Tr. 22 (citing Tr. 399).  During an evaluation in May 2017, Plaintiff reported that he could walk for one mile before needing to rest.  Tr. 26 (citing Tr. 675).  The ALJ noted that Plaintiff reported being able to operate a typewriter and a computer, and in August 2016 he was able to travel to Virginia to visit his parents.  Tr. 27 (citing Tr. 675).  The ALJ reasonably concluded that these activities were inconsistent with the level of impairment Plaintiff alleged.  Tr. 26-27.

Plaintiff challenges the ALJ's finding by asserting the activities cited by the ALJ would not constitute clear and convincing reasons to discount his symptom claims.  ECF No. 16 at 2.  However, Plaintiff fails to identify specific error in the ALJ's analysis.  The ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  Here, the ALJ

identified Plaintiff's specific alleged impairments and noted specific activities that indicated Plaintiff was less limited than he alleged. Tr. 22, 26-28. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 2. Inconsistent with Childcare Activities

The ALJ discounted Plaintiff's symptom claims as inconsistent with the ability to babysit for his granddaughter. Tr. 22, 27. The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins*, 261 F.3d at 857. For care activities to serve as a basis for the ALJ to discredit a claimant's symptom claims, the record must identify the nature, scope, and duration of the care involved, showing that the care is "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). Here, the ALJ noted that Plaintiff reported he had the responsibility of watching his three-year old granddaughter twice a week. Tr. 22, 27 (citing Tr. 596-97). The record provides additional insight into Plaintiff's childcare activities. *See* Tr. 461 (May 26, 2015: counseling treatment notes report "[Plaintiff's] other daughter moved in with her [three] kids and they seem to be seeing him as a babysitter"); Tr. 468 (August 4, 2016: counseling treatment notes state "[Plaintiff] is busy babysitting his grandkids who live with him"); Tr. 469 (August 11, 2016: counseling treatment notes report "[Plaintiff] seems to be

overwhelmed by his grandkids whom he needs to take care of"); Tr. 477 (August

11, 2016: "[Plaintiff] has been watching the grandkids when his daughter is

sleeping as she works nightshift"). The ALJ properly found that Plaintiff's

childcare activities did not support his subjective symptom complaints.

### 3. Controlled with Treatment

The ALJ discounted Plaintiff's symptom claims because his depression was

controlled with treatment. Tr. 22. The effectiveness of medication and treatment

is a relevant factor in determining the severity of a claimant's symptoms. 20

C.F.R. § 404.1529(c)(3) (2017); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439

F.3d 1001, 1006 (9th Cir. 2006) (recognizing that conditions effectively controlled

with medication are not disabling for purposes of determining eligibility for

benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035,

1040 (9th Cir. 2008) (A favorable response to treatment can undermine a

claimant's complaints of debilitating pain or other severe limitations.).

Here, the ALJ cited numerous treatment records evidencing Plaintiff's

depression was controlled with medication. Tr. 22. For example, the ALJ cited a

January 2016 notation in the record stating Plaintiff's use of the prescription

medication Effexor worked well for him. Tr. 22 (citing Tr. 418). The ALJ cited

similar findings by Plaintiff's psychiatrist, Dr. Dosh, in March 2016, June 2016,

and August 2016. Tr. 22; *see* Tr. 483 (March 2016: "[Plaintiff] continues to use

Effexor XR 300mg daily. We discussed possible changes, for example, increased Effexor to 375mg which he has done in the past. He prefers to wait longer until he recovers more from surgery and for the weather to improve); *see also* Tr. 480 (June 2016: "In the past, he had used higher doses of Effexor, 375mg, and a light box with good success during the winter"); Tr. 478 (August 2016: "He has been on 375mg of Effexor in the past without side effects and would like to return to this"). No change in medications occurred because Plaintiff believed his mood would improve with better weather, as it had done in the past. Tr. 477, 483, 486, 488, 560, 598. On this record, the ALJ reasonably concluded that Plaintiff's mental impairments when treated with medication were not as limiting as Plaintiff claimed. This was a clear and convincing reason supported by substantial evidence to discount Plaintiff's symptom claims.

### 4. Inconsistent Statements

The ALJ found that discrepancies in the evidence undermined Plaintiff's alleged symptom complaints. Tr. 28. A report's consistency with other records, reports, or findings can form a legitimate basis for evaluating the reliability of a report. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Further, in evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen*

*v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

Here, the ALJ referred to inconsistent statements in the record related to Plaintiff's ability to perform personal care tasks as "[d]iscrepancies in the evidence." Tr. 28. The ALJ noted that in December 2015, Plaintiff reported he had no problems performing personal care tasks, Tr. 264, which corresponded to Plaintiff's wife report in January 2016 that Plaintiff had no problems performing personal care tasks, Tr. 280. Tr. 28. However, the ALJ noted that in May 2017, Dr. Pollack reported that Plaintiff had difficulty taking care of his personal hygiene needs. Tr. 28, 675. The ALJ's decision to discount Plaintiff's symptom claims because of discrepancies in statements about personal care tasks is not supported by substantial evidence. The ALJ cited to consistent statements made by both Plaintiff and his wife in 2015 and 2016, and one discrepancy in a report by Dr. Pollack in 2017. Tr. 28. Dr. Pollack's report does not provide any details about the personal hygiene tasks with which Plaintiff had difficulty, nor does it explain whether Plaintiff reported this difficulty to Dr. Pollack or if this was an observation made by the doctor during the examination. Tr. 675. This error is harmless because the ALJ identified other specific, clear, and convincing reasons to discount

Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED November 18, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 36